# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CECILE HYACINTHE,           :
                            :
        Plaintiff,       :
                            :       CIVIL ACTION
    v.                       :
                            :       No. 20-cv-05222-WB
PIEDMONT AIRLINES           :
                            :
        Defendant.       :

## MEMORANDUM OPINION

**RICHARD A. LLORET**                                             August 17, 2021
**U.S. MAGISTRATE JUDGE**

    Before me is Defendant Piedmont Airlines' Motion to Enforce Settlement Agreement. Doc. No. 27.[1] This motion arises out of a settlement conference that I held on June 16, 2021, where the parties agreed that Plaintiff Cecile Hyacinthe would withdraw her employment discrimination claims against Defendant in exchange for certain consideration.

    Defendant now alleges that Plaintiff is attempting to back out of an enforceable settlement agreement. *Id.* at 2. Defendant seeks attorneys' fees pursuant to the settlement agreement and asks me to resolve a dispute over a company bank account that Plaintiff controlled while working for Defendant. *Id.* at 3 n.1. Plaintiff counters that the parties did not agree on the essential terms of the settlement agreement and that I should deny enforcement of the written settlement agreement or, alternatively, deny enforcement of certain terms in the proffered agreement. Doc. No. 28, at 3.

---

[1] While Defendant has not filed a formal motion to enforce settlement Agreement, I will interpret its August 11, 2021 letter as such a motion because Defendant has formally asked me to enforce the agreement. *See* Doc. No. 27, at 3 ("Piedmont respectfully requests that the Court enter an Order enforcing the settlement and compelling Ms. Hyacinthe to sign the written settlement agreement . . . ").

Because I find that the parties entered an enforceable settlement agreement, I will enforce that agreement. I will also, however, deny Defendant's request for attorney's fees and its invitation to resolve the additional issue regarding the bank account that Plaintiff controlled.

## **FACTUAL AND PROCEDURAL HISTORY**

On October 20, 2020, Plaintiff filed this action against Defendant, alleging violations of various state and federal employment laws. *See* Doc. No. 1. After Defendant filed an answer and the parties began to exchange discovery, Judge Beetlestone referred the case to me in May 2021 for the purpose of conducting a settlement conference. Doc. No. 14.

On June 16, 2021, I held a four-hour settlement conference via Zoom where all parties and counsel were present. At the end of that settlement conference, the parties agreed that in exchange for a monetary payment Plaintiff would withdraw her current lawsuit, release Defendant from all other claims, and separate from her current employment with Defendant. The parties also agreed that the written settlement agreement would contain other non-economic terms including a no-rehire provision and a non-disparagement clause. Plaintiff raised four open issues at the settlement conference after the parties reached this agreement, noting that she wanted: (1) Defendant to characterize her separation as a retirement, (2) the settlement proceeds split between a Form 1099 and a Form W-2 in a 75 to 25 split, (3) to retrieve her property from Defendant's premises without being harassed, and (4) an agreement that Defendant would not contest any future applications for unemployment benefits. The second and third issues were resolved at the conference. Before the settlement

conference ended, I instructed Plaintiff that she was not to return to work for Defendant.

The parties engaged in subsequent negotiations over the written settlement agreement, and resolved the first and fourth issues that Plaintiff raised. Plaintiff also requested that Defendant pay out her unused vacation time, which Defendant calculated to be six hours. Defendant agreed to pay out that vacation time and sent Plaintiff a draft settlement agreement. Plaintiff's counsel edited the agreement, and Defendant accepted the changes.

On June 25, 2021, Plaintiff advised Defendant that she would not sign the settlement agreement because she disagreed with certain terms. I held a telephone conference with the parties that day. After further negotiations, I set a hearing to resolve the outstanding issues. On July 27, 2021, the parties sent me a joint letter advising me of Plaintiff's six concerns with the settlement agreement: (1) Plaintiff alleged that she never agreed that June 16 would be her last day of work, (2) the no-hire provision preventing Plaintiff from working for Defendant or its parent or affiliate companies was too broad, (3) Plaintiff was entitled to a payout for three weeks of vacation time that would have accrued in July 2021, (4) Plaintiff wanted Defendant to continue to pay benefits for ninety days after the settlement agreement was executed, (5) Plaintiff wanted defendant to pay her for thirty-four days of work when she alleges Defendant threatened her religious freedom, and (6) Plaintiff wanted Defendant to pay her for the time she stopped reporting to work while the parties were negotiating the written agreement after the June 16 conference.

On August 2, 2021, I held a hearing on the record regarding the outstanding issues. During the hearing, Plaintiff testified that she remembered reaching an

agreement on the financial terms of the settlement agreement on June 16. Plaintiff also remembered talking about the no-rehire provision and the disbursement of the settlement proceeds. But, Plaintiff testified that she expected to resolve other issues that she did not raise at the June 16 conference once she returned from vacation. Plaintiff indicated that she wanted Defendant to pay her benefits for ninety days, but admitted that she did not discuss this issue at the settlement conference. She also asserted that she wanted to continue to work for Defendant until July 6, at which point she would have accrued three weeks of vacation that could have been paid out. And, Plaintiff reiterated that she wanted Defendant to pay her for removing her from certain shifts and for the time that she was not reporting to work while the written agreement was being negotiated after June 16.[2] After the hearing concluded, both parties submitted position letters. *See* Doc. Nos. 27, 28.

## DISCUSSION

I have jurisdiction over the pending Motion to Enforce Settlement Agreement because the action is still pending.[3] *Bryan v. Erie Cnty. Office of Children and Youth*,

---

[2] Plaintiff testified that she went on vacation on June 17—the day after the settlement conference—and alleges that she was supposed to return to work on June 22. But, Plaintiff stated that she called out sick until June 28, and testified that her attorney advised her not to return to work once she recovered from her illness.

[3] Because this matter falls within the referral of this case to me for settlement, I am ruling on Defendant's Motion to Enforce Settlement. The Third Circuit has not explicitly held that motions to enforce settlement agreements are uniformly case-dispositive motions that must be resolved by a report and recommendation when before a magistrate judge, pursuant to 28 U.S.C. § 636(b)(1)(B). *See Shell's Disposal and Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 n.8 (3d Cir. 2012) (not precedential) (noting that a motion to enforce a settlement agreement, "on its face, seemed to resolve the dispositive issue of whether a binding settlement agreement exists"). Because a motion to enforce settlement is not listed as one of the motions that cannot be determined by a Magistrate Judge, I have resolved the matter before me pursuant to 28 U.S.C. § 636(b)(1)(A). Nevertheless, I urge the parties to treat the jurisdictional issue with caution, and if either party has objections to this opinion I recommend considering whether to raise the objections before the District Court. *See, e.g.*, *Shell's Disposal and Recycling, Inc.*, 504 F. App'x at 200 n.8 (noting that after a Magistrate Judge entered a motion to enforce a settlement agreement, defendant "filed its objections with the District Court, and the Court conducted a de novo review of those findings, replacing the magistrate's conclusions with its own.").

752 F.3d 316, 322 (3d Cir. 2014) (finding that the District Court maintained jurisdiction over a post-verdict motion to enforce the parties' agreement when the action was still pending).

### A. The parties entered into a binding settlement agreement that will be enforced.

#### 1. *The parties agreed to be bound by the settlement.*

The basis of Defendant's motion is that the parties have entered into a valid settlement agreement that is enforceable against Plaintiff. Plaintiff contends that there was no valid agreement because the parties never agreed on certain material terms.

"Amicable settlement is the judicially preferred manner of resolving disputes, and it is therefore judicial policy to enforce voluntary settlement agreements." *Frompovicz v. Niagara Bottling, LLC*, No. 18-0054, 2020 WL 6118762, at *3 (E.D. Pa. Oct. 16, 2020) (Beetlestone, J.) (citing *Ballato v. Gen. Elec.*, 147 F.R.D. 95, 97 (E.D. Pa. 1993) (Joyner, J.)); *see also D.R. by M.R. v. E. Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997) ("Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts."). "An agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970) (citations omitted). A party's failure to sign a settlement agreement is not dispositive of whether an oral settlement agreement is enforceable. *See Carmago v. Alick Smith Gen. Contractor, Inc.*, No. 5:15-cv-06215, 2016 WL 6568120, at *3 (E.D. Pa. Nov. 4, 2016) (Leeson, J.) ("Defendants' failure to sign the written agreement that Camargo's lawyer prepared does not affect the enforceability of their agreement,

5

because the contract had already been formed at the settlement conference. The written agreement was a memorialization of an agreement that had already been made.").

A settlement agreement is a contract that is subject to rules of contract interpretation. *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 79 (3d Cir. 1982). Under Pennsylvania law, which both parties have treated as controlling, "a court may enforce a settlement agreement if: (1) both parties manifested an intention to be bound by the terms of the agreement; and (2) the terms are sufficiently definite to be specifically enforced." *Danois v. i3 Archive,Inc.*, No. 11-3856, 2015 WL 156015, at *5 (E.D. Pa. Jan. 12, 2015) (Quiñones-Alejandro, J.) (citing *Glenn Distribs. Corp. v. Sanford, L.P.*, No. 12-513, 2014 WL 1608481, at *1 (E.D. Pa. Apr. 22, 2014) (Schiller, J.)).

Here, I find that both parties demonstrated an intent to be bound by the terms of the settlement agreement reached at the June 16 conference and subsequently negotiated prior to June 25. On June 16, the parties agreed to the key terms of the settlement: the monetary payment to Plaintiff in exchange for release of her claims. The parties also agreed that the agreement would contain provisions standard to settlement agreements in employment discrimination cases. During the settlement conference, Plaintiff raised four outstanding issues with the agreement, as described above. Two of those issues were resolved before the settlement conference ended, and the other two were resolved soon thereafter. Further, before Defendant sent Plaintiff a draft written agreement, Plaintiff asked Defendant to pay out her accrued vacation time. Defendant calculated this time to be six weeks, agreed to this provision, and included it in the draft agreement that it sent Plaintiff. Plaintiff's counsel made minor revisions to the agreement which Defendant accepted without further comment.

I find that the parties came to a meeting of the minds on all material terms of the

6

agreement once Defendant and Plaintiff reached an agreement on the four issues Plaintiff raised at the settlement conference. The parties agreed on the financial and release terms of the settlement agreement, and the parties resolved all four issues that Plaintiff raised at the settlement conference in the subsequent negotiations. If the parties had not resolved the four issues Plaintiff specifically raised at the settlement conference, Plaintiff may have had an argument that there was no meeting of the minds. But, because the parties agreed on all the essential terms of the settlement agreement, an enforceable contract was formed. *See Ismail v. Interstate Res., Inc.*, 842 F. App'x 821, 824 (3d Cir. 2021) (not precedential) ("Ismail's failure to sign the settlement documents does not invalidate the settlement agreement. When the parties have agreed on the essential terms of a contract, the fact that they intend to formalize their agreement in writing but have not yet done so does not prevent enforcement . . . . Here, the settlement documents were exchanged to memorialize the terms of an already-reached agreement, and Ismail's obligation to sign the documents was part of what he had already agreed to do.").

Plaintiff's unilateral attempt to invalidate the settlement agreement is too late to have any effect. As stated above, the parties reached a binding agreement once Defendant and Plaintiff agreed on the outstanding issues Plaintiff raised at the settlement conference. Plaintiff's testimony that she expected to resolve the issues she is now litigating once she returned from vacation does not change the fact that she failed to raise any of these issues at the settlement conference or immediately thereafter when the parties were resolving the four issues she actually raised. *See McCune v. First Jud. Dist. of PA Prob. Dep't*, 99 F. Supp. 2d 565, 566 (E.D. Pa. 2000) (Kelly, J.) ("The Settlement Agreement is still binding, even if it is clear that a party had a change of

7

heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing."). Plaintiff's six issues amount to new terms that she cannot insert into the already-existing agreement.

Further, some of Plaintiff's issues are contradicted by what actually happened at the settlement conference. Her first, third, and sixth issues claim that she never agreed that June 16 would be her last day of work, that she should be paid for three weeks of vacation that would have accrued if she was able to work until July 2021, and that she should be paid for the time she stopped reporting to work after June 16. But, Defendant made clear at the settlement conference that its settlement was contingent on Plaintiff not reporting to work after June 16. I ensured that Plaintiff understood that she was no longer allowed to report to work. Therefore, all three of these issues are contradicted by Plaintiff's indication that she understood she was no longer to report to work after the settlement conference. Regarding the remaining three issues raised by Plaintiff, Plaintiff should have raised these when she had the chance to do so at the settlement conference just as she did with the four issues she actually raised at the conference. Plaintiff's six issues are late attempts to alter the already-existing agreement, and I find that the parties agreed to be bound by the terms of the settlement agreement after resolving the four issues Plaintiff raised at the settlement conference.

      2.    *The terms of the settlement agreement are sufficiently definite to be enforced.*

Next, under the second prong required to enforce a settlement agreement, I find that the terms are sufficiently definite to be enforced because the terms are memorialized in a written settlement agreement produced by Defendant. This settlement agreement adequately captures the terms that the parties reached before me

on June 17 and the ensuing negotiations resolving Plaintiff's four outstanding issues. Although Plaintiff now disputes the broadness of the no-rehire term in the written settlement agreement, she did not raise any objections to this provision at the settlement conference. I find that the written settlement agreement adequately encapsulates the agreement that the parties reached at the virtual settlement conference with the exception of the attorneys' fees provision which will be discussed in the next section. Therefore, I will grant in part Defendant's Motion to Enforce Settlement Agreement and direct Plaintiff to comply with the written terms of the settlement agreement except for the attorneys' fees provision.

**B. Defendant is not entitled to attorneys' fees pursuant to the settlement agreement, and I will not consider an issue Defendant is raising for the first time**

Defendant submits that I should award it attorneys' fees pursuant to a term in the written settlement agreement and that I should resolve an issue regarding a bank account Plaintiff handled on behalf of Defendant. Neither of these issues were raised at the settlement conference or soon thereafter, and I will not find in Defendant's favor on either issue.

First, Defendant asserts that it is entitled to attorneys' fees because the written settlement agreement contemplates awarding the prevailing party attorneys' costs and fees in an action to enforce the settlement agreement. But, as explained above, I will enforce the written settlement agreement to the extent that it encapsulates the parties' agreement at the settlement conference and during the negotiations immediately thereafter. The parties did not contemplate awarding attorneys' fees in their negotiations at the conference, nor did they contemplate them when resolving the four issues Plaintiff raised at the conference. Therefore, Defendant should not be allowed to

seek enforcement of this term when Plaintiff did not consider it during settlement negotiations. I will deny Defendant's motion for attorneys' fees and costs and will strike this provision from the written settlement agreement.

Next, in a footnote on the last page of its letter, Defendant raises a new issue. Defendant asserts that Plaintiff was the head of a committee that planned events and lunches for Defendant's employees and that she managed a bank account with funds for this purpose. Defendant asserts that it has not been able to obtain an assurance from Plaintiff that these funds will be returned, and asks for a Court order that these funds be returned and for Plaintiff to provide a verification regarding their return. Defendant concedes that it has never mentioned this issue before; Defendant did not mention the issue at the settlement conference, in its previous letters, or at the August 2 hearing. Doc. No. 27, at 3 ("There is one ancillary matter that Piedmont neglected to mention at the August 2 hearing, but which must be resolved."). I will deny Defendant's request for relief for the same reason I denied Plaintiff's arguments against enforcing the settlement agreement: Defendant should have raised this issue earlier. Defendant has asked me to find that the parties reached a binding, enforceable settlement that captured the essential terms discussed at the settlement conference. I have found that the parties did reach such an agreement, and that disposes of the matter before me. Because I have found that the parties reached a binding settlement agreement, Defendant cannot also ask that I grant it relief unrelated to that settlement agreement. Therefore, I will deny Defendant's request for additional relief.[4]

---

[4] In a letter filed on August 16, 2021, Defendant points out that on August 10, 2021, Plaintiff filed a complaint with the Equal Employment Opportunity Commission regarding alleged religious discrimination. *See* Doc. No. 30, Doc. No. 31 (Plaintiff's response letter). Defendant alleges that this complaint, which states that Plaintiff was not allowed to report to work in June 2021 as retaliation for asking for religious accommodations, is an abuse of legal process and justifies an award of attorneys' fees.

## **CONCLUSION**

For the reasons explained above, I will grant in part Defendant's Motion to Enforce Settlement and enforce the terms of the written settlement agreement to the extent they memorialize the negotiations between the parties. I will deny Defendant's request for additional relief regarding the bank account handled by Plaintiff and likewise deny Defendant's request for attorneys' fees.

**BY THE COURT:**

*s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**

---

Doc. No. 30. I will not consider Plaintiff's post-settlement conduct because I have already decided that the parties reached an enforceable settlement agreement. Defendant may challenge the propriety of Plaintiff's conduct in a separate proceeding.